Good morning, and may it please the court. Richard Katzke from Duke Law School. Today the appellant will be represented by Christian Ross, who will be arguing, and by Molly Pines and Emma Klein, all third-year law students at Duke. Thank you. Welcome. May it please the court, Christian Ross for the appellant, Mr. Patrick Nichols. Mr. Nichols did what he needed to do to state an excessive force claim, but the district court failed to recognize the sufficiency of his factual allegations under Graham, and it failed to recognize that his lawsuit was against both officers Bumgarner and Schmidt. Mr. Nichols alleged that Bumgarner and Schmidt approached him with an arrest warrant. Bumgarner then grabbed him by the arms, slammed him to the ground, and broke his arm in multiple places. And then, when he was already on the ground, Officer Schmidt pressed his knee into his neck so that he couldn't breathe. And after the officers did all these things, they did that despite the fact that Mr. Nichols alleged that he had done nothing to threaten, resist, or evade them. Mr. Nichols alleged that there was video evidence that would show exactly what happened during his arrest. Mr. Nichols may not have pleaded with exhaustive detail, but he pleaded enough as a pro se, incarcerated civil rights plaintiff to plausibly allege that Bumgarner and Schmidt used disproportionate force. This court should therefore remand to the district court and allow Mr. Nichols to prove his case. Starting with the Graham analysis, the most important factor is whether an arrestee poses an immediate safety threat to the officers on the scene. This factor favors Mr. Nichols because, as alleged, the officer's life was in no danger or harm. In fact, any danger in the circumstance was exactly the opposite. When Bumgarner had thrown him to the ground and broke his arm, and Schmidt pressed his knee onto his neck, Mr. Nichols alleged that he feared that his life was in danger. And indeed, the fact that there were multiple officers on the scene outnumbering Mr. Nichols even lowers the amount of force that would have been proportionate and the possible threat that Mr. Nichols could have posed. And these are factual allegations that Mr. Nichols was in danger, was not the danger himself. What is our standard of review for this case? Your Honor, it's a novel review for the Graham analysis of excessive force. What is the quantum of evidence that we have to consider when looking at a 12 v. 6 motion of dismissal? Your Honor, looking at the factual allegations that Mr. Nichols has included in his filings. And to what extent? What is the weighing of those? How do we view those factual allegations? We can look at them, but what must they show? The factual allegations have to show that there is a plausibility that the officers used disproportionate force under what this court follows under the Graham analysis, and specifically those factual allegations are afforded the presumption of truth when they're well pleaded. So we've been very, we've had different standards in terms of pro se, maybe even pro se who's in prison, as opposed to someone who's represented by a lawyer. And to what extent do we need to employ that here? Because it seems clear if this individual had had a lawyer, you would probably accept we dismissal of this complaint would be proper. Is Mr. Nichols had been represented, then is likely a proper that his complaint would have been dismissed. But here, because he was proceeding pro se, this court applies a liberal construction to his pleadings. And that liberal construction means that he should have been afforded more generosity and more leniency with following procedural requirements and to look at the substance of his arguments to raise the strongest arguments that they suggest. So you just want to argue about excessive force. You don't want me to ask you questions about why Officer Smith was not in this on that complaint. Your Honor, I'm happy to respond to questions about either the Graham analysis or that Schmidt was not in this complaint. But we believe that district court aired in both cases. It was not served. No, Your Honor, he was not served. But that error was on the district court here. The district court's policy is that for incarcerated plaintiffs who are proceeding pro se, the district court orders the clerk to affect service of process. So Mr Nichols here filed his initial complaint pro se with the court, and the court then directed the clerk to serve process. But they did based upon the ones that one that was listed in the caption. The Smith was not in the caption. Correct, Your Honor. We believe that the district court's mistake was in not recognizing that Mr Nichols was trying to sue both Officer Bumgarner and at that time an unnamed officer. And so the district, how would you How would you identify an unnamed officer to be served? So, Your Honor, in the first instance of his initial complaint, we think that the district court's service should have gone to Officer Bumgarner. But after Mr Nichols identifies Schmidt by name in his amended complaint, at that point, the district court should have recognized that that was another party that was appropriate to be served. And under Gordon, the district court had a responsibility to instruct Mr Nichols in his amended complaint to specifically remedy anything that could be cured in his initial complaint, such as not having the party named in the caption specifically. If we agree with you on your first argument regarding sufficiency of the pleadings, and we disagree with you in your second argument, couldn't your client simply amend the complaint on remand to add Mr Schmidt? Yes, Your Honor. If this court gives remand with Lee for him to amend, then that could be resolved in the district court. We think that Mr Nichols did sufficiently identify Officer Schmidt as well in his amended complaint, and that this court should adopt an approach like the Ninth and Tenth Circuits have done, which is to look at the body of the complaint. And so that when it's clear from the face of a complaint that a pro se plaintiff is bringing suit against multiple identified officers for substantially the same conduct, that that should be sufficient. But even if this court disagrees that that is not the rule proceeding forward, at the very least, Mr Nichols should have the opportunity to amend his complaint in the district court. But speaking to the factual allegations that Mr Nichols has alleged here, he's alleged in his own words, in everyday language, as best as he can, what happened to him during his arrest, about his actions, about the actions of the officers, about the circumstances. And he didn't just ask the district court to take his word for it, he alleged repeatedly that there was video evidence that would, in his words, quote, showing what happened during the arrest. And he said this to show that not only did the officer's life not be in danger or harm, and that he wasn't doing anything, but that there was another source of verification for those allegations. Did the district court review that video evidence? No, Your Honor, that video evidence was not reviewed in the district court. Do you believe the district court had an obligation to review it? No, Your Honor. My understanding is that the video evidence was not ever obtained by Mr Nichols. He alleges in his notice of appeal that is in possession of the county police. And so he... My understanding is that he has tried to subpoena, but unsuccessfully get those video records. Mr Nichols was trying to describe a negative, that he wasn't a threat during his encounter with the police, and that he wasn't doing anything. And that specific way of trying to describe a negative is reflected by his everyday language they used to explain what had happened to him. And he also alleged that he wasn't resisting, and he wasn't evading arrest. He specifically says that he did not do nothing to the officer. And that allegation most straightforwardly means that he wasn't trying to fight back, and he wasn't trying to run away. And to the extent that that statement is ambiguous, this court's precedent in Woody v. Nance is to interpret pro se plaintiff's allegations that are ambiguous in their favor. And there's nothing proportionate about throwing a non threatening, non evading, non resisting arrestee to the ground with bone breaking force, and then applying a knee to the neck of someone who's already subdued. And Mr Nichols' allegations, they support an inference that not only did he not resist or evade, but once he was already on the ground, he likely could not resist or evade, and then that is when Schmidt then pressed his knee upon his neck. And again, these are factual allegations about Mr. Nichols' perspective of his own conduct and that of the officers. And in addition to the Graham factors, this court also looks at the severity of the injury that a pro se plaintiff brings. Mr. Nichols alleged that he received multiple serious injuries at the hands of Bumgarner that required immediate hospital treatment and have caused him a lifetime of damage, including medical treatments and chronic pain. This is much more than what this court found to be, quote, severe injuries in Jonesy Buchanan of a broken nose, lacerations and bruised ribs. And Schmidt's additional force of a knee on Mr. Nichols' neck after he was already on the ground only compounds the unreasonableness of the force that the officers used. So the inclusion of Schmidt here and what you say based upon not the first complaint, but the amended one where he is mentioned, but not in the caption of it. The concern is we courts are flooded with pro se complaints, and you're correct that typically this court will direct the clerk to serve the individuals with their offices there, but they're not named in a complaint. The clerks don't go looking through it to see who to serve. They just look up here at the caption and see who to serve. The district court, I suppose if you read it very carefully, you can figure out where he ought to be suing this guy, too. And there may be reasons why a defendant may choose to sue someone or not sue, but this court could make that account. I mean, there's a certain amount of, I guess it's paternalism of being a lawyer for the defendant that may have a line, but the concern would be what is the limiting principle on that? If, you know, a pro se person files a complaint, and let's say this is not meant to be a facetious, but just illustrative. He names a non existent person or Bugs Bunny in the caption, but in the body of it, there's a whole bunch of names or whatever. I as Judge Bernas pointed out, apparently you can still do this. I assume that the statute has not run because you say you can still do it. Uh, now. But, you know, even when it comes up, why would you seek that to be cured to say I would to ask? I want to put his name in the caption and now send it back. So, Your Honor, to answer those two questions I know I gave up, but do the best you can. Let me answer that. Yeah, in a couple parts, Your Honor. First to the limiting principle here, we're not asking for this court to adopt a rule that district courts will have to exhaustively and closely read every pro se complaint that comes in to identify any possible person named and then make a judgment calls to whether that person ought to be read as being in the caption. Instead, we're asking that this court consider something far more modest, which is that when it is plainly, reasonably clear from the face of the complaint, as is here, that substantially the same conduct is that issue with multiple named parties in the body of a complaint that a failure to include those parties in the caption should be viewed as a procedural infidelity on part of the pro se plaintiff that under liberal construction should be construed to be as complying with those rules. But, Your Honor, second question about how this is going to play out. I think rather than the named parties of imaginary person or other folks named there, we're not concerned about artful pleading. In this case, it's clear that Mr. Nichols, a complaint, it is a minute complaint is essentially a long a long paragraph. It's it's barely over a page long. It's not particularly burdensome on the court to handle those things in that instance. And so we don't think that that is a concern about there being too much for the district to look at when it's playing from the face here. Does that respond to your request? Yeah, it's still kind of there because the client got a second shot. Oh, you're asked to respond there. And they sent that back. Uh, he didn't. It is asked to put in more detail. Uh, but he didn't add much and he didn't put smith in the caption and in the court dismisses it with prejudice. Um, so you're honored to respond to that. I think the issue there is that the district court in its initial dismissal did instruct Mr Nichols to add more factual detail. And we believe that he did. He named schmidt specifically in his a minute complaint. He included the exact address of where it happened. He included more allegations about what actually happened during his arrest. But if there was a deficiency in naming someone in the caption, the district court never gave him any instructions or indication that he did not, um, that he needed to do that. And in fact, the second submitted complaint form has instructions that say that it needs to match identically who he lists as defendants to match the caption. And we think it's reasonable that a pro se plaintiff is going to have the caption of their amended complaint match with the caption was in the order that the district court gave them. Mr Nichols doesn't have a sophisticated understanding to know that in the minute complaint, that's where he needs to also be including folks in the caption and specifically here. Um, the statute of limitations for Mr Nichols, Mr Nichols claims they ran shortly before the district court's initial dismissal order without prejudice. Mr Nichols filed timely after that. And we think that to the extent that the statute of limitations have run equitable tolling should apply. But in this instance, the ability to have leave to amend should cure the defects in the district court should have given him that opportunity turning to the last of the grand factors. I want to address that this court may take judicial notice of the facts underlying Mr Nichols is arrest. But even those facts support Mr Nichols at this stage. And the reason is because the offenses for which he was arrested are not inherently violent. Public court records show that Mr Nichols was arrested for theft, forgery and second degree burglary, none of which require violence as an element. And neither does anything in the records suggest violence on Mr Nichols is part. And so it wouldn't have been reasonable for the officers coming to the scene to assume that he was maximally dangerous. And once they got there and they saw that he was not an immediate threat, that he wasn't resisting, not evading, even less force would have been reasonable for them to use. At the very least, this court should not take an inference against Mr Nichols at this stage. That would turn the motion to dismiss standard on its head and not give Mr Nichols the proper protection of a law that he deserves as a non moving party. Should we take into consideration the fact that he was arrested on the basis of an active warrant and not an ongoing crime? Your Honor, I think the fact that it's an active warrant changes the circumstances for what officers may expect upon trying to affect that arrest. If anything, that supports Mr Nichols is claimed even more because the officers would have had more concrete information about what he was likely to be be either doing or be what kind of 30 might pose. And again, once they get to the scene, then it's going to be more information for them to see that he is not not a threat, not resisting, not evading. And that should be sufficient for their force to be less than what they used. And it's more, more disproportionate the way that they did it. But even this court doesn't take judicial notice, Mr Nichols still alleged not to state a claim because you cannot take inferences against him at this stage without going against the motion to dismiss standard. At the very most, this factor is empty and Mr Nichols should still be able to state a claim because Graham is a totality test. And even if he has a factor that weighs against him, this court held in Lewis v. Caraballo that even that factor weighing against them, a prosecutor plaintiff can still prevail under the Graham analysis. Thank you. I'll see you in further questions. Thank you. Thank you, Mr Ross. Miss Nunley. Good morning and may it please the court. My name is Kristen Nunley on behalf of the appellee officer Bumgarner. Your honors, courts are obligated to liberally construe pro se complaints, but liberal construction is not without limits. A pro se plaintiff still must allege facts that state a cause of action here. The district court gave Mr Nichols ample latitude. It provided him with an opportunity to amend his complaint and even provided him with a road map of the exact facts he needed to provide in order to state a claim of excessive force. Mr Nichols failed to provide any additional facts in his amended complaint, and the district court properly dismissed it. And this court should affirm an excessive force claim is analyzed under the Fourth Amendment's objective reasonableness standard, as outlined in Graham v Connor and the factors that this court considers in its reasonableness analysis include the severity of the crime at issue, whether the suspect posed a threat to the officers or others, whether the suspect was resisting arrest or attempting to flee and the extent of the injuries. But ultimately, the overarching inquiry is whether the force used was proportional under the circumstances. Mr Nichols failed to provide factual content about the Graham factors. Well, he stated his complaint that there was video evidence, so he incorporated that by reference. And it's my understanding that district courts often view video evidence before ruling on motions to dismiss. And this district court judge in this case didn't view the evidence. Uh, video evidence. Your Honor, there is no body cam video evidence of this arrest. And as far as I know, Mr Nichols has not requested any video evidence. He alleged that there was video evidence in his complaint, however, and he could have described what the video evidence would show. Um, but I know that there is no body worn camera footage of this arrest. So I'm describing the arrest. I think he was describing in his own words is a pro se litigant. What he would expect the body cam video to show. Yes, Your Honor. And and how he expressed that is not sufficient to state a claim of excessive force. If I can start with the first, sorry. Well, let me get to the nub of this thing here. It's this. I think Mr Ross says well, in terms of his description, how do you prove a negative? And that is at this point pleading, he said he had an arrest warrant. Police officer came, approached him. And when he did so, he went from approach. It's a I mean, he's alleging a 0 to 10 zero, meaning he's there, got the warrant and he grabbed him and threw him to the pavement, causing his arm to be broken. And the next thing happened. The other officer put his knee on his neck, which momentarily prohibited his breathing. What else does he have to show at this point in terms of it's like if that's what happened, what is he gonna say? Well, well, obviously the sky was blue just before he snatched me and it was when it was raining that day, you know, saying it and I have seen it. And you know, otherwise you think that's kind of strange, but I've seen video situation where people just dragged out immediately and just that's what happened. I mean, I mean, so is that incredible? And what does he have to fill in if there's nothing to fill in? What? He said he can't make it up. No, Your Honor. But what is he supposed to do? That's all. There's a common sense question. What do you do if that's what's happened? He went from war for your arrest to the floor to the ground, broke his arm. They got on his neck. What is it? What is if that's true in which we have to assume it is. What is there else to say? Well, Your Honor, I think the district court by the district court. I'm asking you. Okay. What is it there to say? Instead of saying I did not do nothing, he could have said I was complying with commands. He's not the other one. There's grammar. He could have been a Kent syntax. He didn't have to use that again. You know, come on. He could say I listened to the officer. Well, we know I didn't run away. You've seen the record. He said I didn't do nothing for for to him. He didn't use to wrong preposition. I mean, but basically I didn't do anything. What else can he do? I'm serious about that. This is not about law. We're talking just common sense. Assuming that's what happened was we must do. What else do you say? If that's what happened, he approached him with the war. He threw him down and his arm was broken. Other officer while he's on the ground, put his knee there. I wasn't there, but that's what he planned is what happened. So you tell me what else was he supposed to do? I think he could have provided facts about what his actions were during the circumstances of the arrest. He was minding his business. He was standing there. That's what he said. I'm there. Here. We don't know that he was standing there. He could have been running away at the time. He could have been running away if the officer approached him and threw him down. Where's the running part? I'm saying I did not do nothing. Gives us no factual content for what was happening. When did he not do nothing? Was it after he was already slammed to the ground? Let me try a little bit. Okay. You know, you don't get to control the narrative. You weren't there. I wasn't there. He described it exactly what he said happened. He approached him and he was already had the warrant and he threw him down on the ground. Now, I don't know. I mean, discovery might show that that's wrong trial or whatever it is, but I just don't see it. You know, it's, you know, I mean, obviously, if you you're a lawyer, if you were in a situation, you probably have 10 pages before you get to his arm touched you because that you're trained, but all he didn't do it in the humbleness of the human experience. He said, This is what happened to me. He came up to me and he snatched me, put in the ground and broke my arm and y'all people going to school that might be able to put fancy words, but that's all I can say in the vernacular of the home. I just don't understand why he has to do more because your honor, the district court provided him a road map of the exact facts to include. He was given instruction specifics to include in his amended complaint so that the district court would have enough information. What do you tell him to do? The district court specifically said the court he can't make up something. I'm sorry. You can't make up what didn't happen. No, sir. But, um, the district court said to add additional facts about the circumstances of the arrest, the severity of the crime at issue Mr Nichols actions and any potential threats which existed to Mr Nichols to the officers or to bystanders. That's a list. That's a road map. That's a road map. Those are specific instructions. That's a road map. That's that. If these things happen, then tell us what happened. If those things didn't happen. What are you gonna put there? Mr Nichols could have said there were no bystanders around. That would give us information about whether he was a threat to others. If he doesn't know how could what would he say? But he would know about the circumstances of the words. It would make a difference. You know, there were no bystander. What difference that making a pleading in terms of pleading his case? One of the Graham factors is whether the suspect posed a threat to the safety of the officers or others. If an arrest happens in the middle of a busy street, the public may be at risk, and that's important information in terms of the proportionality of the force. If it is, if it is a problem, it's police officer must create a problem in the sense that he chose that time to approach him, and there's no evidence that he had a gun or anything like that. So if you know, if if if there was something that the officer would have created, wouldn't it? No, Your Honor. I mean, he approached him. He approached him at a point where he could subdue him. There were two of them, and apparently did it pretty quickly. According to him, he snatched me, threw him down on the ground. I mean, you're putting more on to me a litigant that's that's required. I think that what's required is for him to provide sufficient content for the district court to determine whether the force used was proportional. I think it's very important that Mr Nichols provided no information about the underlying crime. And now, for the first time on appeal, asks this court to take judicial notice that at the time of the arrest, he had outstanding warrants for theft, forgery and second degree burglary. But asking for judicial notice of a fact does not mean the same thing as pleading a fact in his complaint. Well, at the motion to dismiss stage, we're, um, to draw all inferences. Take the allegations is true. Draw inferences in favor of the non moving party and particularly in a case like this of a pro se litigant to construe the complaint liberally. And here it strikes me that the facts that you're alleging are missing in the complaint are all negatives. They're not. They're saying this didn't happen. There weren't people there. I wasn't being violent, and that doing so is drawing inferences in favor of, um, of your client. Your Honor, I would say that we're not asking for inferences to be drawn in Officer Bumgarner's favor, but I'm saying that there are no reasonable inferences to be drawn unless there are well pleaded factual allegations. Well, isn't it a reasonable inference that there were there were one could infer whether that was or not that there was nobody else that there were no close bystanders closely nearby? If it's not, if that's not stated in the complaint, I feel that that would then mean that we could plead. Basically, I did nothing. The officer was not in danger, and that would always be sufficient for an excessive force claim. But that would render motions to dismiss obsolete. Well, there's much more here than I did nothing, and the officer wasn't in danger. There's allegations of, uh, pretty specific allegations of actions of the officer there of the officer. There are allegations of what those actions of the officer resulted in. Um, there were there was there was a statement that, uh, the officer said that they had a warrant, and so the warrant is referenced in the complaint. Um, again, this individual is not an attorney and, uh, did not, it appears, have access to counsel. Um, there's there's there are allegations about the specific, uh, pain the plaintiff has suffered since the arrest. Um, and and what experience what he experienced at the time. So it's not as bare bones as you're suggesting. It's simply missing some of the negatives. Officer Bumgarner's position is that it is the facts or conclusory statements. I would argue that officer Mr Nichols includes in his complaint and amended complaint are insufficient for the Graham factors and that the district court provided him an opportunity to amend with instructions and that Mr Nichols failed to add any additional facts in his amended complaint. The problem in cases anytime we're dealing with construing a pro se complaint, you're struggling with it. We all struggle with it because it, you know, at least from my perspective, it tells me that sometimes you're better off not having a lawyer because if you had a lawyer, the other side has already said this would be dismissed. But as as from what we can glean here, we not only look at the complaint and I think Iqbal and Tromley doesn't really squarely cover this sort of situation. We we draw inferences and we look at what's here and that's maybe what's being alluded to you by Judge Burnett and Judge Gregory. When you look at what he actually said, uh, even what court, that litany of things the court said there and I'm listening to that litany and I'm saying, well, some of that stuff updates, he's asking, well, tell us that you don't get the relief, which is, you know, tell us that you didn't resist or something like that. Well, what is going to do? Say I resisted and no one's putting out a complaint. I mean, every come in the answer on it. But the complaint part about it is when he says, uh, I didn't do anything, basically, whatever. And they did this for no reason. That tells you right there, you know, if there's no reason, even a layman turn, that means I didn't do anything that gave them a reason. I didn't resist. I didn't do other things to it. Those are inferences you can make from it. Doesn't say specifically. And again, uh, the struggle you got is, is, you know, lawyer's complaint would be different than this. And that's where we are on excessive force. I mean, the fact of the matter, if you take it as Gregory reads it, that zero to 10 happens, which is basically the officer walks up. He knows the guy's done something, whatever. And then the next thing he knows, he's slamming into the ground. Now, I don't know how big this guy is, but to break someone's arm in two places, you've got to do a good job for that. And then they throw your knee on his neck. I don't know what the circumstances of that, but that's all stuff that comes out. We had a 12 B six stage, and ultimately, I don't know where it goes in terms of how we know where it goes with qualified immunity. That sort of thing. That wasn't even brought to up there, but that's down the road on these cases here. But that's where we are. We'll probably keep going back and forth. And your job is to say, Well, you know, Mr. Bunker said, No, he didn't do this. He did this and all that. But that's a factual thing. And 12 B six. If we're doing this, there's this liberal construction, and isn't it somewhat different? Pro say, as opposed to pro say in prison, it seems like it's even more so if you're in prison, isn't it? Pro say, incarcerated plaintiffs are entitled to liberal construction. Yes, but even more so than just pro say who's not in prison. Is that is that the case? I mean, I'm asking. I believe Mr Nichols did cite a case to that effect. Yeah, so So I mean, so he's got an even heightened level of what you call liberal construction of and probably can go back and forth on it. But ultimately, today is just a it's a call as to what you infer on it and what you don't. Uh, but, you know, and I think we'll make that decision. But talk a little bit about Smith and as to because there is a concern there that simply putting a name within an amended complaint should trigger the court to then serve that one. But it seems to me you might get there here because he says there is an unnamed one in the first one, not in the caption. Yes, there's an unnamed. Did he name somebody? It seems like to me that might trigger you want to do something right before I get to Schmidt. Can I address one thing that you mentioned? Yes, please. You said, I don't know how big this guy would have been, but it must have taken a lot of force to break his arm. And I think it's very interesting in a case before this court. Smith B Ray. That was a fact that a plaintiff pleaded that she was a small woman compared to a large police officer. And that, um, was to the second grand factor. Whether she was a threat to the sufficiency of the pleadings and all right. I just wanted to point out that was he didn't have to plead that. No, but I wanted that out. This is a matter of curiosity that throwing him down to the ground quickly. Either someone's pretty strong to be able to put someone down the ground like that small and to do it that manner. I don't know the circumstances, but we're only dealing with just those. But speak a bit. Yes, Officer Schmidt. Officer Schmidt is not a defendant in this case. Um, for the first time on appeal, Mr Nichols contends that the procedural history of the case illustrates that since the beginning, Mr Nichols intended to sue both officers. But this is simply not true. All indications point to Mr Nichols intention to sue only Officer Bumgarner. The complaint allows space for Mr Nichols to write the and he wrote only Officer Bumgarner's name and where there was space for other defendants. He wrote not applicable 21 times. He wrote not applicable on that piece of paper. That indicates to us he was intending to sue only Officer Bumgarner when he wrote his amended complaint. This is J 53. He again wrote only Officer Bumgarner's name. He left blank the spaces for any defendants. This shows an intention to sue only Officer Bumgarner. As you mentioned, at all times, the case caption included only Officer Bumgarner. It never said at all. There was no indication that there were multiple defendants being sued. Officer Bumgarner pointed out to Mr Nichols that Officer Schmidt was not a defendant in this case, um, and that Officer Bumgarner's understanding was that allegations against Officer Schmidt were being used to bolster the against Officer Bumgarner. Mr Nichols own opening brief seems to acknowledge this purpose when he argues that the presence of Officer Schmidt speaks to the objective unreasonableness of Bumgarner's alleged use of force. So all indications point to Mr Nichols expressed intent to sue only Officer Bumgarner, and the district court cannot interpret his unexpressed intent. We can't read Mr Nichols mind. We have to look at how he is expressing his intent, and Officer Schmidt was never served. There was no service of process. Um, and this isn't a case of failing to identify the right defendant. Mr Nichols sued the proper defendant in this case. Was it fatal? I mean, if he had put the name in the caption, then you think that that would satisfy if he had added Officer Schmidt's name in the caption of the amended complaint, or if he had added him as a defendant in the space provided for multiple defendants, it would have put the district court on notice, and it could have been addressed at that point. This court didn't ask them to amend the caption of the case instead of men to complain, and he put his name in the complaint. Um, and I'm just wondering again from a pro se person who's being told to go do something, and he obviously didn't talk to a lawyer or something in the interim. It doesn't look like he did. He didn't goes and I guess attempts to do something and send it back and put the name of him there. But because he didn't take that name and stick it right there in the caption, you say that's not good enough. And what he wrote wasn't a long statement. I mean, it was pretty concise, but he named him in there. And what did he say Schmidt did to him? I believe he said he kneeled on his back or perhaps his neck. He said he put his knee on his throat, and then later he says he was wrongful for damaging my arm and putting his knee on my throat, and I couldn't breathe for a second. My life was in danger. And the ninth and the 10 circuits both say that the district courts that I'm quoting may look to the body of the complaint to use the failure to include an individual in the caption. So long is the and I'm paraphrasing complaint makes it plain that the defendant is meant to be a defendant. Seems like it's pretty plain. He uses the word damaging. He asks for damages. Yes, Your Honor. But it was pointed out to Mr Nichols that Officer Schmidt had not been named as a defendant, so he had an opportunity before the district court to put to to assert that he was suing Officer Schmidt as well. He put the name in there, put the name in the complaint, but it wasn't pointed out. He's not put up there in that caption. When he came back, he put Smith's name in it. Yes. And when Officer Bumgarner moved to dismiss the amended complaint, Officer Bumgarner said Officer Schmidt is not a defendant. And Mr Nichols responded in opposition. This is J. A. He represents Schmidt of himself. He is just represented as an individual defendant in the matter. I'm sorry. Why would it matter to him whether Smith is in there? Maybe because it's a witness or whatever. But I mean, things like that. Again, the trial court is the one that's doing the service of something there that basically effectuate the service. Unlike regular civil cases, you do it yourself because it's in prison. He's directing the clerk to serve the people who needs to be served. But it's Bumgarner that says he's not named. But at that point, that ought to flag to the trial court. Well, he's here in this here. Maybe we ought to go ahead and serve him. I apologize, Your Honor. I believe I met Red if you'd like me to respond or I can just close. I just wanted to finish by saying that once Officer Bumgarner pointed out that Officer Schmidt was not a defendant, Mr Nichols said that Officer Schmidt quote, do have something to do with this claim, referencing the claim of excessive force against Officer Bumgarner and ended with quote, I do have sufficient facts showing that Officer Bumgarner was wrong by law, end quote. So we would argue that Officer Bumgarner was the only defendant at all times. Right. Thank you. Thank you. None. Lee. Ross. You have anything for? Yes. Your Honor's. I'd like to address a few brief points. First, to clarify, Mr Nichols is not alleging that there's body cam footage. We understand him to believe that there is sorry that there is traffic cam or building camera footage that he says will show what happened during his arrest. But to respond to what my friend, the other side has argued that Mr Nichols has not alleged any other additional facts in his amended complaint. Mr Nichols did allege that Schmidt's name specifically was added to his complaint that there was a warrant for his arrest is in his amended complaint that Bumgarner's life was in no danger or harm. That's in his amended complaint. These are things that he adds specifically from the district court's instructions. And we can see most clearly from the amended complaint precisely why his allegations are sufficient and also why Schmidt is a defendant. The admitted complaint form was different than his initial complaint form because he had changed facilities and this amended complaint form specifically asked him to do three things. It asked him to name what happened to him, how he was harmed and how each defendant took wrongful action against him. And then in that section he named specifically what happened during his arrest and identifies both by name Bumgarner and Schmidt that they were wrongful for damaging his arm and for putting his knee on his throat. That identifies Schmidt as a defendant in his amended complaint. And that's further underscored by his other filings that my friend here said also reference that he says that Bumgarner and Schmidt together violated his Fourth Amendment rights and that Schmidt does have something to do with his claim because he stated his name in his lawsuit. This is also apparent to the defense on the motions to dismiss because they acknowledge in both the initial motion to dismiss and the amended complaint motion to dismiss that he is trying to allege claims against another officer. And that's perfectly consistent with what Mr. Nichols has been alleging from the very beginning that two officers used excessive force against him. He alleged that an unnamed officer he later identifies as Schmidt harmed him during doing the arrest and quote used force against me and that his remedy in that initial complaint was against officers plural for the damage they had done to him. If Mr. Nichols had had a lawyer his complaint would have looked different. But at bottom all the sophisticated language and additional words that our attorney would have helped him to use would have meant exactly what Mr. Nichols already pleaded. That he didn't do anything and that the other officers lives were not in danger or harm that would warrant the force that was used against him. As a pro se civil rights incarcerated plaintiff Mr. Nichols told his story as best he could in everyday language. That's what he needed to do and that's what he did. That should be enough to state a claim. Unless your honors have more questions I'll reserve my time. Thank you Mr. Ross. Thank you as well. Thank you for your services and your court opponent and glad to hear from another student with you yeah would you stand yes it's a team it's always a team effort yes very well very well well great way well the blue devils were represented today well represented thank you so much to the court opponent again we realize so much on the services of lawyers like yourselves who come here and those who soon will be lawyers to come here and argue and help us with these great cases tough issues thank you so much thank you professor and all none Lee we also recognize your able representation as well we'll come down we're gonna come down to Greek Council and then first we're going to ask the clerk to do a brief recess for us thank you
judges: Roger L. Gregory, James Andrew Wynn, Nicole G. Berner